
FILED
OCT 15 2015
Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES; NATIVE ECOSYSTEM COUNCIL, <br><br> Plaintiffs, <br><br> vs. <br><br> FAYE KRUEGER, in her official capacity as Regional Forester of Region One of the U.S. Forest Service; U.S. FOREST SERVICE, an agency of the U.S. Department of Agriculture; U.S. FISH & WILDLIFE SERVICE, an agency of the U.S. Department of Interior, <br><br> Defendants. | CV 14–191–M–DLC <br><br> ORDER |

Before the Court are the parties' cross motions for summary judgment. For the reasons explained below, the Court grants Defendants' motion for summary judgment.

## Background

Plaintiffs Alliance for the Wild Rockies and Native Ecosystem Council challenge the approval by the United States Forest Service (USFS) and the United States Fish and Wildlife Service's (USFWS) of the Rendezvous Trails Project (the

1

Project).

The Project involves approximately 250 acres of commercial thinning of lodgepole pine in the Rendezvous Ski Trail System. The Rendezvous Trail System is a network of 35 kilometers of recreation trails, primarily used for cross country skiing. While not determinative of the Court's ruling in this case, it is worthy of note that this project does not involve large-scale logging and construction of miles of new roads. In fact, as noted in the Decision Memo approving this project, the area encompassed by this thinning project is a world class Nordic Ski destination, which contains a biathlon shooting range, warming huts, storage buildings and outhouses. This recreation facility is also used during the summer months for biathlon-like events, mountain biking, and running and hiking. Most of this area was also heavily logged between 1950 and 1980. The Project is located adjacent to, and within two miles of West Yellowstone, Montana. While the forest in the Project area is currently experiencing a low population level of mountain pine beetles, the Forest silviculturist recommends that the forest be thinned to maintain stands of healthy trees as they are very susceptible to the next mountain pine beetle outbreak. The purpose of the Project is to create and maintain a healthy forest in order to protect the aesthetic quality of the trails even during a mountain pine beetle outbreak. The USFS found, and the

USFWS agreed, that the Project is categorically excluded from documentation in an environmental impact statement (EIS) or an environmental assessment (EA) pursuant to 36 C.F.R. § 220.6(e)(14).

Plaintiffs' claims arise under the National Environmental Policy Act (NEPA), the National Forest Management Act (NFMA), the Endangered Species Act (ESA), and the Administrative Procedures Act (APA). Plaintiffs assert that the Project violates the Gallatin National Forest Plan (Forest Plan), that Defendants failed to take a hard look at the effects of the Project, that Defendants should have initiated formal consultation regarding grizzly bear and lynx, and that Defendants wrongfully dismissed Plaintiffs' pre-decisional appeal.

## Legal Standards

### I. National Environmental Policy Act

"NEPA is a procedural statute that does not 'mandate particular results but simply provides the necessary process to insure that federal agencies take a hard look at the environmental consequences of their actions.'" *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 639-40 (9th Cir. 2004) (internal citations omitted); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351 (1989)(NEPA "prohibits uninformed–rather than unwise–agency action"). NEPA requires government agencies to "consider every significant aspect of the

environmental impact of a proposed action." *Baltimore Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 97 (1983). NEPA also requires that relevant information be made available to the public so that they "may also play a role in both the decision making process and the implementation of that decision." *Robertson*, 490 U.S. at 349.

An agency may comply with NEPA in one of three ways. The agency may prepare an EIS, prepare a less extensive EA and make a finding of no significant impact, or document that the proposed action falls within an established categorical exclusion. NEPA regulations authorize a categorical exclusion for a "category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations." *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 927 (9th Cir. 2000) (citing 40C.F.R. § 1508.4). An agency must also determine that there are no existing extraordinary circumstances where the excluded action may have a significant environmental effect. 40. C.F.R. § 1508.4. The USFS's decision that an action meets the requirements for a categorical exclusion will be upheld as long as "the Forest Service considered the relevant factors and determined that no extraordinary circumstances were present." *Alaska Ctr. v. USFS*, 189 F.3d 851,

4

859 (9th Cir. 1999).

While courts must "strictly interpret the procedural requirements in NEPA and the CEQ regulations," *Churchill County v. Norton*, 276 F.3d 1060, 1071 (9th Cir. 2001), courts must "be mindful to defer to agency expertise, particularly with respect to scientific matters within the purview of the agency," *Klamath-Siskiyou Wildlands Center*, 387 F.3d at 993 (internal citations omitted.) "[T]he ultimate standard of review is a narrow one," and a court may not "substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

## II. National Forest Management Act

NFMA requires forest planning of National Forests at two levels: the forest level and the individual project level. 16 U.S.C. §§ 1600-1687. At the Forest level, NFMA directs the Department of Agriculture to "develop, maintain, and, as appropriate, revise [forest plans] for units of the National Forest System." 16 U.S.C. § 1604(a). A Forest Plan sets broad guidelines for forest management and serves as a programmatic statement of intent to guide future site-specific decisions within a forest unit. *Citizens for Better Forestry v. U.S. Dept of Agriculture*, 341 F.3d 961, 966 (9th Cir. 2003); *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 729 (1998). Forest Plans must "provide for multiple use and sustained yield

5

of the products and services" derived from the National Forests, including "outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness." 16 U.S.C. § 1604(e)(1).

At the individual project level, NFMA requires that each individual project be consistent with the governing Forest Plan. *Great Old Broads for Wilderness v. Kimbrell*, 709 F.3d 836, 851 (9th Cir. 2013).

The Forest Service's interpretation and implementation of its own Forest Plan is entitled to substantial deference. *Siskiyou Regional Educ. Project v. USFS*, 565 F.3d 545 (9th Cir. 2009); *Forest Guardians v. USFS*, 329 F.3d 1089, 1099 (9th Cir. 2003).

### III. The Endangered Species Act

Section 7 requires an agency to ensure that no discretionary action will "jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species." 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.12(a). "Only after the [agency] complies with § 7(a)(2) can any activity that may affect the protected [species] go forward." *P. Rivers Council v. Thomas*, 30 F.3d 1050, 1055–57 (9th Cir. 1994).

A determination by the USFS in a biological assessment that an action "may

6

affect" a listed species or critical habitat gives rise to a consultation requirement under section 7 of the ESA. *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1027 (9th Cir. 2012). The Ninth Circuit holds that "the minimum threshold for an agency action to trigger consultation with the Wildlife Service is low." *W. Watersheds Project*, 632 F.3d at 496.

There are two forms of consultation: formal and informal. *Karuk Tribe of Cal.*, 681 F.3d at 1027. Formal consultation is necessary where the USFS has determined that an action is "likely to adversely affect" a listed species. But it is not required if 1) the USFS finds, either in its biological assessment or through informal consultation, that while a project "may affect" a listed species, the species is "not likely to be adversely affected" and 2) the USFWS concurs in writing. 50 C.F.R. §§ 402.12(j)–(k), 402.14(b)(1), 402.13(a).

## IV. The Administrative Procedure Act

Under the APA, a federal court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] without observance of procedures required by law." 5 U.S.C. § 706(2). As recently articulated by the Ninth Circuit:

Under this standard of review, an "agency must examine the relevant

7

data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency's action is arbitrary and capricious if the agency fails to consider an important aspect of a problem, if the agency offers an explanation for the decision that is contrary to the evidence, if the agency's decision is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise, or if the agency's decision is contrary to the governing law. *Id.*

*Organized Village of Kake v. U.S. Dept of Agriculture*, 746 F.3d 970, 974 (9th Cir. 2014). Though a review of agency action under the APA must be "thorough, probing, [and] in-depth," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), the standard of review is "highly deferential," *Northwest Ecosystem Alliance v. U.S. Fish and Wildlife Service*, 475 F.3d 1136, 1140 (9th Cir. 2007). The court must presume the agency action is valid and affirm it if a reasonable basis exists for the decision. *Id.*

## V. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure a party is entitled to summary judgment if it can show that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Generally, cases involving review of final agency action under the APA do not involve fact finding but only a review of the administrative record. *Northwest Motorcycles Ass'n v. U.S. Dept of Agriculture*, 18 F.3d 1468, 1472 (9th Cir. 1994).

Accordingly, summary judgment is the appropriate process to resolve this case.

## Discussion

### I. NFMA claims

Plaintiffs claim that the USFS failed to comply with the Forest Plan in two ways. First, Plaintiffs allege that the Project increases total motorized access route density via construction of new road segments and converting existing trails to logging roads. Second, Plaintiffs contend that the Project does not comply with the 2006 Gallatin National Forest Travel Management Plan (Travel Plan) standards.

### A. Forest Plan

Plaintiffs allege that the USFS is in violation of the Gallatin National Forest Plan Amendment 19 (Amendment 19) because the Project would build less than one-half mile (.46) of new road segments and convert non-motorized trails into logging roads. Plaintiffs state that building new roads would increase the total motorized access route density in violation of Amendment 19. Defendants respond that the Project will not increase the total density within the Bear Management Subunit where the new temporary roads would be constructed. Defendants state that the Project will not change the proportion of the subunit which already has a road density exceeding 2 mi/mi².

Plaintiffs claim that Amendment 19 requires the Forest Service to adopt Greater Yellowstone Ecosystem-wide access standards, and in the interim prohibits increases in open and total motorized access route densities. The APA grants the reviewing court only the authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The USFS has implemented the access management standards found within the 2003 Conservation Strategy for Grizzly Bear in the Yellowstone Ecosystem. The Conservation Strategy was adopted as an amendment to the Forest Plan. FS 8161. Using the Greater Yellowstone Ecosystem Grizzly Bear access Model, the USFS calculated the changes in total densities resulting from implementation of the Project. In the area where new temporary roads will be constructed, the total density currently exceeds 2 mi/mi², which is the unit of measurement used to categorize grizzly bear habitat. The Project is consistent with the Conservation Strategy access standards and Plaintiffs have not shown that the USFS has unlawfully withheld or unreasonably delayed implementation of these standards. Plaintiffs' NFMA claim regarding the Forest Plan is unsupported.

**B.   Travel Plan**

Plaintiffs further argue that the Travel plan does not contemplate any motorized use on the Rendezvous Trail System. Plaintiffs acknowledge that some

routes provide for administrative use, but claim that the specific routes designated for the Project were not authorized for motorized use, administrative or otherwise. Defendants counter that the Travel Plan expressly states that it is not intended to preclude use of roads or trails for motorized administrative or permitted use, regardless of whether they are restricted to the public.

The Travel Plan distinguishes public routes from administrative routes. Administrative use includes USFS employee activity as well as permitted use, such as motorized use by contractors and permittees. FS7950-55, FS9745, FS10994, FS6347. The Travel Plan, in part, was created to allow the public to more easily determine which routes are open for travel and which are restricted. Plaintiffs cite FS9630-31 and FS10983 to support their argument that the trails are designated as non-motorized. However, these maps and tables were created for the public to identify routes open to public use. Administrative routes are generally not open to the public and so are not necessarily included on Travel Plan maps and tables. No routes within the Rendezvous Ski Trail System are closed to administrative or permitted use. Thus, Plaintiffs' claim that the Travel Plan does not authorize motorized use on the Project area trails is without merit.

Plaintiffs also claim that the Project will cause open motorized access road density and total motorized access road density values in the Madison subunit #2

11

to exceed the density values contemplated in the 2006 Travel Plan Biological Opinion.

The Travel Plan includes density values for open and total densities at full implementation. These values were calculated in 2006. Since that time, as the biological assessment for the Project shows, the USFS has updated those density values. The updated values reflect use of newer technology, including GIS data, and incorporates road densities from lands managed by other federal agencies. The USFS states that the difference in methodologies is responsible for the differing results, not the result of implementation of the Project. The Court defers to the USFS's reasonable, well-supported interpretation of its Travel Plan. *Native Ecosystems Council v. USFS*, 418 F.3d 953 (9th Cir. 2005).

## II. NEPA claims

Plaintiffs' first NEPA claim is based on their allegation of a violation of NFMA. As discussed above, Plaintiff's NFMA claims fail and therefore their related NEPA claim similarly fails. Plaintiffs' next NEPA claim alleges that Defendants failed to take a hard look at potential environmental consequences of the Project. Specifically, Plaintiffs allege that the USFS failed to take a hard look at project impacts on grizzly bear. The USFS responds that they conducted the requisite grizzly bear analysis for a categorical exclusion decision memorandum.

If an agency demonstrates that a proposed action falls within a categorical exclusion, and the agency reasonably determines that there are no extraordinary circumstances, then further NEPA documentation is unnecessary. *Cal. ex rel. Lockyer v. USDA*, 575 F.3d 999, 1013 (9th Cir. 2009). The USFS determined in this case that the Project fell within an established categorical exclusion, and the USFWS agreed. In their reply brief, Plaintiffs for the first time argue that extraordinary circumstances exist, thus precluding a categorical exclusion designation. Plaintiffs' also raise a NEPA claim alleging that the USFS failed to produce a biological assessment of wolverine for public comment. While Plaintiffs raised an ESA claim regarding the wolverine in their Complaint, the allegation of a NEPA violation was raised for the first time in Plaintiffs' summary judgment brief. The Court will not consider any new arguments.

In the biological assessment and the wildlife specialist report, FS5637-77 and FS5581-88, the USFS analyzed the impacts of roads on grizzly bears. The reports state that due to the already high motorized access route densities and associated human use levels, grizzly bear habitat effectiveness is currently low in the Project area. FS5653. The reports analyzed the total motorized access route density as well as the open motorized access route density and found that the Project would not affect either. FS5654. Further, the reports show that the Project

would not affect grizzly bear secure habitat or grizzly bear food sources. *Id.* Defendants are entitled to summary judgment on this claim.

### III. ESA claims

Plaintiffs allege that section 7 of the ESA requires that the USFS initiate formal consultation on Canada lynx and grizzly bear. The USFS contends that its conclusion that the Project is not likely to adversely affect lynx and grizzly bears is not arbitrary, capricious, or in violation of the ESA. Formal consultation, including preparation of a biological opinion, is required if the agency determines that a proposed action 'may affect' any listed species or its critical habitat unless the agency determines through informal consultation, with the written concurrence of the USFWS, that its action 'is not likely to adversely affect' such species or habitat. 50 C.F.R. § 402.14(b); 16 U.S.C. 1536(c); 51 Fed. Reg. 19,926, 19,941.

#### A. Grizzly bear

Plaintiffs argue that the record can only support a 'likely to adversely affect' conclusion, thus requiring formal consultation. Plaintiffs cite to the biological assessment, stating that roads have an adverse effect on grizzly bears and that loss of habitat negatively impacts grizzly feeding, breeding, sheltering, and traveling. Plaintiffs emphasize that grizzly bears form negative associations with roads and learn to avoid the disturbance generated by roads.

14

The biological assessment addresses the impact of roads on grizzly bears. What Plaintiffs fail to note is that the Project would occur exclusively in an area already cris-crossed by roads, many of which have regular administrative motorized use. Additionally, the Project area is less than two miles from West Yellowstone, a heavily used, and populated, area. Temporary roads constructed for the Project will be in an area where roads and trails already exist. The biological assessment states that any potential disturbance from the Project would be minor in comparison to the existing high levels of motorized access and human use. FS5683. Thus, the effects of the Project on the grizzly bear were determined to be insignificant and discountable and not likely to adversely affect grizzly bears. FS5639-77. USFWS agreed with this determination. The record clearly supports this finding, and Defendants are entitled to summary judgment on this claim.

**B.    Canada lynx**

Plaintiffs claim that the USFS must initiate formal consultation for the Canada lynx based on the contention that 116 acres of affected lynx habitat and 8 acres of affected multistoried habitat creates a demonstrable adverse effect on the lynx. The Project is in the South Fork Madison lynx analysis unit. The USFS evaluated the potential effects on lynx pursuant to the Northern Rockies Lynx

15

Management Direction Record of Decision and the Terms and Conditions included in the Biological Opinion. FS5654. The two prevailing standards relate to maintaining habitat connectivity and providing adequate quantities of lynx and snowshoe hare habitat.

The biological assessment projects that approximately 116 acres of lynx habitat will be affected by the Project. FS5659. Of these, eight acres are snowshoe hare habitat. This would result in a snowshoe hare habitat reduction of less than one percent and a potential lynx loss of habitat of 0.1 percent. As stated above, the Project is located in a heavily used area near West Yellowstone. Such proximity to human activity and roads minimizes the impacts on habitat connectivity. *Id.* The record clearly supports the finding that the Project may affect, but is not likely to adversely affect the Canada lynx. Plaintiffs' claim therefore fails.

### IV. Administrative appeal

Plaintiffs' final argument is that the USFS wrongfully exempted its decision notice from the pre-decisional appeal process. The 2014 Farm Bill repealed the Appeals Reform Act, directing that the pre-decisional objection process shall not apply to categorically excluded projects under NEPA. Pub. L. No. 113-79 § 8006, 128 Stat. 649 (Feb. 7, 2014). As a result, the USFS no longer offers appeal

opportunities pursuant to 36 C.F.R. Part 215 for categorically excluded projects. However, the USFS does continue to provide public involvement opportunities for categorically excluded projects pursuant to 36 C.F.R. Part 220. In order to effectuate this change, the USFS accepted and considered all timely-submitted comments received in response to a legal notice published on or before March 5, 2014. The Project decision Memorandum in this case was signed March 13, 2015. Defendants are entitled to summary judgment on this claim.

IT IS ORDERED that:

1) Defendants' motion for summary judgment (Doc. 24) is GRANTED.

2) Plaintiffs' motion for summary judgment (Doc. 21) is DENIED.

The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiffs. This case is CLOSED.

Dated this 15th day of October, 2015.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court